**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| USF INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | )   2:10-cv-001513-RLH-LRL |
| v. | ) |
| | )   **O R D E R** |
| SMITH'S FOOD AND DRUG CENTER, INC., | ) |
| d/b/a/ SMITH'S FOOD AND DRUG CENTER, | ) |
| #377, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

Before the court is plaintiff's Motion to Compel Discovery Responses (#15). The court has considered the motion (#15), defendant's Opposition (#17), and plaintiff's Reply (#24).

Plaintiff, USF Insurance Company ("USF"), filed this case on September 3, 2010, to obtain a determination of its rights and obligations to defendant, Smith's Food and Drug Center #377 ("Smith's"), in an underlying action. On December 7, 2010, the parties filed their respective Proposed Discovery Plan and Scheduling Orders (#12). The court approved Smith's proposed Scheduling Order on December 23, 2010, which set May 9, 2011, as the discovery cutoff date. Scheduling Order (#13).

On January 26, 2011, USF served a Request for Production of Documents (Set One). Smith's responses were due by Friday, February 25, 2011. *See* Fed.R.Civ.P. 34(b)(2)(A). On Monday, February 28, 2011, counsel for USF, Pamela M. McKay ("McKay"), attempted to contact defense counsel, Dennis Prince ("Prince"), by email to inquire about the status of Smith's responses, because they were late. She was advised that Prince was in a deposition, but that his office would contact her regarding the discovery. Counsel faxed responses that afternoon. The responses consisted of boilerplate

objections to nearly all the requests, and for a few of the requests it directed plaintiff to documents previously identified and disclosed. Smith's did not produce any new documents. In response to each and all of the requests, Smith's "reserve[d] its right to supplement its response to this Request with non-privilged documents, if necessary." *See* Exh. 3 to Opp'n (#17).

Included with the February 28 responses was a letter from Prince, explaining that he had recently received additional documents from Smith's and would supplement its response no later than March 9, 2011. Ech. 2 to Opp'n (#17). McKay rejected an extension of time during a phone conversation with Prince on March 1, 2011. On March 2, 2011, McKay sent a letter to Prince, "intended to be an initial 'meet and confer," in which she advised that USF considered Smith's objections waived, "including without limitation, attorney client communication and attorney work product." Exh. D to Mot. (#15). She requested that USF withdraw all objections and serve responsive documents by March 4, 2011.

Another letter from McKay, intended as a "final attempt" at a meet and confer, followed on March 11, 2011. McKay again demanded that Smith's respond, without objection, to the requests for production and that Prince contact her not later than March 14, 2011, otherwise a motion to compel would follow. That day, Prince responded by email and noted that he had attempted to call McKay, but she had been unavailable. Exh. 6 to Opp'n (#17). He took the position that Smith's had not waived all of its objections because it was neither being dilatory nor was there any great delay. He indicated that his office was in the process of preparing the documents and a privilege log for production, and would have them to USF by March 18, 2011. He asked that USF wait to receive the responses, evaluate their adequacy, then initiate a meet and confer if necessary before filing a motion to compel.

By letter dated March 16, 2011, McKay acknowledged receipt of the March 11 letter and confirmed counsels' agreement to allow Smith's to produce the remaining documents before conducting a meet and confer. She indicated that if USF did not receive Smith's production by March 18, 2011 as promised, however, USF would file a motion to compel. Plaintiff filed the instant motion (#15) on March 21, 2011. Smith's provided its outstanding responses and privilege log on April 4, 2011, concurrent with its Opposition (#17). USF's Reply (#24) indicates that the adequacy of Smith's

responses to Request Nos. 5, 6, and 9 through 27 remain at issue. Discovery closed on May 9, 2011.

**Discussion**

The court has broad discretion in controlling discovery. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Rule 34(a) permits each party to serve the opposing party with document requests within the scope of Rule 26(b) that are "relevant to the subject matter involved in the action." Rule 26(b)(1). Pursuant to Rule 34, a responding party must either object or respond to a request for production of documents within 30 days, unless some other time frame has been ordered by the court or agreed to by the parties. In responding to Rule 34 requests, "the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Rule 34(b)(2)(B). Where the responding party seeks to assert the attorney-client privilege and or the work-product doctrine, the party's assertion must be express and "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Rule 26(b)(5). An evasive or incomplete response must be treated as a failure to respond. Rule 37(a)(4). Pursuant to Rule 37(a)(3)(B)(iv), a party may seek an order compelling discovery if the other party "fails to respond that inspection will be permitted–or fails to permit inspection–as requested under Rule 34."

**Request Nos. 5, 6, and 9 through 25**

Smith's first response to Request Nos. 5, 6 and 9-25 consisted solely of a repeated boilerplate objection. Its supplemental responses to each of these requests likewise consisted of a substantially similar, repeated response:

> Objection. This Request is overbroad, ambiguous and unduly burdensome. Further, this Request seeks documents which are protected under the attorney/client and attorney work product privileges. Without waiving said objections, all non-privilege (sic) documents have been produced pursuant to LR 26-1 and supplements thereto. Defendant/Counterclaimant reserves its right to supplement its response to this Request with non-privilege documents, if necessary. ***See* Defendant/Counterclaimant's First Supplemental Disclosure of Witnesses and Documents Pursuant to LR 26-1; Defendant/Counterclaimant's Second Supplemental Disclosure of Witnesses and Documents Pursuant to LR 26-1, with privilege log; and**

3

1  **Defendant/Counterclaimant's Third Supplemental Disclosure of Witnesses and Documents Pursuant to LR 26-1, with 1st Amended Privilege Log.** *See also*, **list of non-privilege documents responsive to Request Nos. 1, 2, 3, 4, 5, 6, 7 and 8. Defendant/Counterclaimant reserves its right to supplement its response to this Request with nonprivilege documents, if necessary.**

While this response refers USF to documents previously produced by Smith's, it doesn't indicate which of the documents, specifically, were responsive. Such a response is evasive or nonresponsive within the meaning of Rule 37(a)(4). *See Walker v. Lakewood Condominium Owners Assoc.*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) (explaining that a party's boilerplate or generalized objection is "tantamount to not making an objection at all."). Smith's must supplement its responses to indicate by bates stamp number the specific documents which are responsive to the requests. Additionally, Smith's must pay the reasonable costs and attorney's fees incurred by USF in bringing the motion (#15) and reply (#24).

USF argues that Smith's has waived all objections, including attorney-client privilege and work product doctrine, because its responses were not timely. A "failure to object to discovery requests within the time required constitutes a waiver of any objection." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992); *see also* Rule 34(b)(2). Even where the untimely objection is based on privilege, the court may find a waiver. *See Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981). However, waiver does not automatically result from noncompliance with Rule 25(b)(5). *See e.g. Burlington N. & Santa Fe Ry. Co. v. United States District Court*, 408 F.3d 1042, 1049 (9th Cir. 2005) (holding that boilerplate objections are insufficient to assert a privilege, but "reject[ing] a *per se* waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30–day time limit"); *Cunningham v. Conn. Mut. Life Ins.*, 845 F.Supp. 1403, 1409 (S.D. Cal. 1994) ("Courts distinguish between a 'slothful' and 'arguable' failure to properly assert a privilege."); *EEOC v. Safeway Store, Inc.*, 2002 WL 31947153 at *2 (N.D. Cal. Sept. 16, 2002) (finding waiver of attorney-client privilege or work-product privilege not appropriate where defendant's privilege log, filed six months late, cured inadequate blanket objection to discovery request). Rather, waiver of the attorney-client privilege is a harsh sanction reserved generally for unjustified, inexcusable, or bad faith

4

1  conduct, and a waiver may be unnecessary where other remedies are available. *Moe v. System
2  Transport, Inc.* 270 F.R.D. 613, 623 (D. Mont. 2010) (citing *Safeway Store, Inc.*, 2002 WL 31947153
3  at *2-3).

4      The circumstances here do not support a finding of waiver of the attorney-client privilege or
5  work product doctrine.  There was no complete surprise attendant to the delay nor was the risk of
6  prejudice to USF severe. *Safeway Store, Inc.*, 2002 WL 31947153 at * 2-3.  Prince repeatedly explained
7  that his office was processing documents provided by Smith's shortly before the responses were
8  originally due, and that his office was working to prepare an appropriate privilege log.  Smith's
9  responses were supplemented with the privilege log prior to full briefing on the motion. *See id.*; *accord*
10 *Burlington N.*, 408 F.3d at 1149 n.3 (recognizing that "compiling a privilege log within 30 days may
11 be exceedingly difficult, even for counsel who are sophisticated, experienced, well-funded, and acting
12 in good faith").  Accordingly, while the court could in its discretion find a waiver, given the harshness
13 of the sanction relative to at least some degree of diligence on the part of Smith's, it will not do so here.

14 **Request Nos. 26 and 27**

15     These requests demand production of two original, signed Maintenance Agreements between
16 Smith's and its subcontractor as identified in paragraphs 5 and 6 of Smith's counterclaims.  Instead of
17 producing the original agreements, Smith's produced copies, stating that it is not in possession of the
18 original signed agreement.  As noted by USF, it is not obvious why Smith's would not have the original
19 agreements that it made with subcontractors. Accordingly, Smith's must make a good faith effort to
20 locate the responsive documents and produce them.  If, however, after a good faith and diligent effort
21 to locate the documents, it is unable to do so, it must supplement its responses to explain with
22 specificity what steps it took and why it cannot locate the documents in question.

23     Accordingly, and for good cause shown,

24     IT IS ORDERED that plaintiff's Motion to Compel Discovery Responses (#15) is granted to the
25 following extent: with the exception of valid assertions of attorney-client privilege and work-product
26 doctrine, defendant must supplement its discovery responses without objection consistent with this

order.

IT IS FURTHER ORDERED that defendant shall pay the reasonable expenses, including attorney's fees and costs, incurred by plaintiff in bringing the Motion (#15) and Reply (#24).

IT IS FURTHER ORDERED that plaintiff's counsel shall file an affidavit of fees and costs not later than June 27, 2011.

DATED this 16th day of Jun, 2011.

_____
**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**