# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| USF INSURANCE COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) 2:10-cv-01513-RLH -LRL |
| | ) |
| SMITH'S FOOD AND DRUG CENTERS, INC., *et al.*, | ) **O R D E R** |
| Defendants. | ) |

Before the court is plaintiff/counter-defendant USF Insurance Company's (hereinafter "USF") Emergency Motion Compelling Smith's Food and Drug Center, Inc. (hereinafter "Smith's") To Produce The Original 2006 Agreement For Inspection. (#45). Defendant/counter-claimant Smith's filed an Opposition (#47), and plaintiff filed a Reply (#48).

In this action, plaintiff USF seeks declaratory relief to the effect that USF never owed a duty to defend or indemnify Smith's with regard to a personal injury claim. (#1). In its counterclaim, Smith's asserts that, based on a May 25, 2006, agreement (hereinafter "J & I Agreement") with USF's insured (J & I Maintenance), USF was obligated to defend and indemnify Smith's. (#6). Additionally, Smith's argues that (1) USF failed to properly reserve rights in its handling of Smith's tender of defense; (2) USF waived all defenses to Smith's claim for defense and indemnity; and (3) USF breached the duty of good faith and fair dealing owed to Smith's. *Id.*

On January 26, 2011, USF requested that Smith's produce, among other things, the *original* signed 2006 J & I Agreement. (#45). In response, defendant Smith's asserted that it did not possess the original, but that plaintiff had already been provided with copies of the agreement. *Id.* After plaintiff filed a motion to compel (#15), the court ordered defendant Smith's to produce the original J

& I Agreement. (#31). On July 14, 2011, Smith's disclosed the existence of two originals, and offered one for inspection at counsel's office. (#45). Subsequently, during the depositions of Ms. Espinosa and Mr. Cardenas, the deponents produced the J & I Agreement and admitted that the protocol was to execute two original agreements . *Id.* However, the agreement produced did not contain the signature pages. *Id.*

Thereafter, on August 26, 2011, the plaintiff served Smith's with a request for production of the original signed J & I Agreement for inspection, testing, and sampling. (#45 Exhibit B). On August 29, 2011, Smith's produced a copy of the executed signature page to the J & I Agreement. (#45). In light of Smith's July 14, 2011 disclosure that the originals existed, plaintiff retained Dr. Aginsky as a non-testifying consultant, and served Smith's with an amended request for inspection, testing and sampling of the agreement. *Id.* In response, Smith's emailed USF requesting confirmation that the expert would only be *inspecting* the original J & I Agreement. *Id.* Plaintiff informed defendant that sampling and testing were also necessary, as there is a question regarding the date of the signatures. *Id.* Smith's asserted that, absent a court order, sampling and testing would not be permitted. *Id.*

**Motion To Compel (#45)**

After attempting to resolve the issue without the court's intervention, plaintiff USF filed the present emergency motion to allow destructive testing of the signatures on one of the original J & I Agreements. (#45). Plaintiff states that the sole purpose of the proposed test is to determine the date on which signatures were applied to the document by analyzing the ink. *Id.* In opposing the motion, Smith's argues that testing should not be permitted because the date of the signatures is irrelevant and the proposed ink date test is unreliable. (#47). Further, defendant expresses a concern with the damage the testing might have on the signatures and the ability to utilize it at trial. *Id.* Alternatively, if the court finds the destructive testing is permissible, Smith's requests that the expert follow a written protocol, the testing be conducted in the presence of its expert, and that Smith's counsel maintain possession of the original documents at all times. *Id.*

2

Federal Rule of Civil Procedure 34 "governs the pretrial production of evidence for testing and inspection by one's adversary," including destructive testing. *Ostrander by Ostrander v. Cone Mills, Inc.,* 119 F.R.D. 417, 419 (D. Minn. 1988). When a party refuses to allow the destructive testing, the court exercises its discretion in ruling on whether or not to permit the testing. *Id; See also* Fed. R. Civ. P. 26(c). In making this determination, the court looks at several factors, including: 1) whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; 2) whether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way; 3) whether there are any less prejudicial alternative methods of obtaining the evidence sought; and 4) whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial. *Mirchandani v. Home Depot*, USA, Inc., 235 F.R.D. 611 (D. Md. 2006)(hereinafter "*Home Depot*").

Here, an evaluation of the *Home Depot* factors weighs in favor of permitting the destructive testing. *Id.* First, as an initial matter, the court finds that the results of the proposed test, if reliable, would be relevant to the subject matter of this action. Fed. R. Civ. P. 26(b)(1)[1]. In Smith's counter-claim, it revealed the existence of the J & I Agreement. (#6 and #8). Plaintiff now questions whether the agreement was actually signed by the parties in 2006. (#48). Therefore, an expert's opinion regarding the dates of signatures on the original J & I Agreement, if reliable, is reasonable, necessary and relevant to proving plaintiff's case. *See* Fed. R. Civ. P. 26(b)(1). This evidence, in the circumstances presented, may be fairly characterized as integral to proving plaintiff's case. *Mirchandani*, at 615 (holding that "[t]he evidence must be integral to proving the movant's case and do more than strengthen an already established claim or defense."). Further, defendant's position that

---

[1] Relevance within the meaning of Rule 26(b)(1) is considerably broader than relevance for trial purposes. *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978). In terms of discovery requests, relevance means only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence. *Id.*

3

the plaintiff's theory is unfounded is misplaced, as "plaintiff [USF] need not prove [its] case for the opportunity to prove [its] case." *Id.*

With regards to the second inquiry, defendant Smith's ability to present evidence at trial will not be hindered in any way, because, as admitted by both parties, there are two originals of the J & I Agreement. (#48). Further, since the sample of the ink will be small, the other original will remain virtually intact, and Smith's has retained a copy of the agreement, there will be no prejudice to the defendant. *Id.*

The third inquiry enumerated in *Home Depot* also weighs in favor of permitting testing, because there is no other known method of testing the date of the ink, and the opposing party, Smith's, has failed to present any to the court. *Mirchandani*, at 616 (holding that "a non-movant's counter-proposals may aid in the effort to preserve as much of the object as possible."); See also *Bostic v. Ammar's Inc.,* 2011 WL 251009 at 4 (E.D. Ky.)(holding that when the "best-and only-method" is by destructive testing, and there is no non-destructive alternative available, the testing is proper.).

The fourth and final inquiry to be discussed – the existence of safeguards to minimize prejudice to Smith's – supports a finding that destructive testing should be permitted. *Mirchandani*, at 614. As previously discussed, the parties have copies of the original and a second signed original J & I Agreement that can be presented to the finder of fact during the trial. (#48). Further, documenting each step of the testing through photographs, videos, or other methods adequately safeguards the defendant from suffering any prejudice. *Mirchandani*, at 617; *Ostrander,* at 421. Therefore, the court finds that conducting destructive testing on the J & I Agreement is permissible. *Mirchandani,* at 611. However, the court notes that the actual reliability of the testing is an issue to be address by the District Court Judge, if necessary.

Accordingly, and for good cause shown,

IT IS ORDERED that plaintiff/counter-defendant USF's Emergency Motion Compelling Smith's To Produce The Original 2006 Agreement For Inspection (#45) is granted in part, as discussed

above.

IT IS THEREFORE ORDERED that on or before November 1, 2011, counsel shall meet and confer to agree on a protocol for testing the ink on one of the two original J & I Agreements, which will include Smith's counsel maintaining possession and control over the J & I Agreements at all times, and the presence of Smith's expert at any times USF's expert is collecting or testing the ink samples.

IT IS FURTHER ORDERED that on or before November 1, 2011, counsel shall file a stipulation and order memorializing the protocol, which shall require that the samples be collected on or before November 14, 2011, and the results of the testing be served on counsel for Smith's by November 28, 2011.

DATED this 19th day of October, 2011.

**CAM FERENBACH**
**UNITED STATES MAGISTRATE JUDGE**

5